**In re Michael Edwin KIRK, d/b/a Kirk Construction Company.**

**Mark T. DUNN, Trustee, Plaintiff,**

v.

**ALEXANDER LUMBER CO., et al., Defendants.**

**No. 86–3145.**

United States District Court, C.D. Illinois, Springfield Division.

March 13, 1987.

John Stevens, William T. Hundman, Bloomington, Ill., for plaintiff.

Donald R. McClarey, Dwight, Ill., Thomas Yost, Donna Stuart Lawson, First Nat. Bank of Normal, Normal, Ill., for defendants.

### OPINION ORDER

MILLS, District Judge:

Bankruptcy appeal.

The issue: Does a secured creditor who enjoys a perfected security interest created by the assignment of a beneficial interest in a land trust automatically retain a *perfected* security interest in proceeds resulting from a sale of the trust *res?*

(If so, the creditor has priority over the bankruptcy trustee pursuant to Ill.Rev. Stat., ch. 26, § 9–301(1)(b)).

We reverse. The bankruptcy court's determination that the secured party in this case retained a perfected security interest in the proceeds is in error.

## I.

The present action is by the trustee in bankruptcy for an order authorizing the trustee to sell the debtor's interest in two contracts for the sale of two condominium units comprising the *res* of a land trust. The debtor, Michael Edwin Kirk, d/b/a Kirk Construction Company, filed a voluntary petition for relief pursuant to the Chapter 7 liquidation provisions of the Bankruptcy Code. At the time he filed the petition, Kirk owned a 100% beneficial interest in the land trust that is the subject of this appeal. First National Bank of Normal has served as trustee of the land trust.

Prior to Kirk's insolvency, on November 18, 1980, the Alexander Lumber Company took a security interest in Kirk's interest in the trust to secure monies due Alexander by Kirk. Alexander did not file a financing statement with respect to the collateral.

Then, on February 15, 1985, Kirk and the FNB executed a contract to sell one of the condominium units. Payment was to be made on an installment basis. The other unit was likewise sold in May of 1985.

Kirk filed his petition on August 20, 1985, and the appellant, Mark Dunn, was appointed trustee. Upon the trustee's motion, and over Alexander's objections, the bankruptcy court entered an order pursuant to 11 U.S.C. § 365 permitting the trustee to assume each of the contracts. Then on November 4, 1985, the trustee petitioned the Court to sell the debtor's interest in those contracts free and clear of liens and encumbrances. Alexander filed an objection to the petition and a hearing was held on December 12, 1985. The Court granted the petition, and requested the trustee to submit a proposed order. Prior to entry of the order, Alexander filed a motion to reconsider.

On December 27, 1985, the Court entered an order authorizing the sale of Kirk's interest in the two contracts free and clear of liens. In that order, the Court held that Alexander had not perfected a lien against the proceeds from the sale of the condominium units. Thereafter, on March 31, 1986, the Court reconsidered its previous ruling, holding that Alexander had a perfected security interest in the contract proceeds by virtue of its perfected security interest in Kirk's beneficial interest in the land trust. The trustee appeals.

In this appeal, the trustee contends that Alexander, through its failure to file a financing statement covering the proceeds, has not perfected a security interest in those proceeds. Should this be the case, the trustee would defeat Alexander's unperfected security interest in the proceeds pursuant to § 9–301(1)(b) of the Illinois Commercial Code.[1] On the other hand, Alexander maintains, and the bankruptcy court ruled, that a financing statement was not required in order for Alexander's security interest in the proceeds to remain perfected after sale of the trust *res*. Before discussing these contentions, a brief outline of this Court's standard of review of the lower court's holding is in order.

## II.

In reviewing a bankruptcy court's decision on appeal, the district court must adopt the bankruptcy court's findings of fact unless clearly erroneous. *In re Ebbler Furniture & Appliances, Inc.,* 804 F.2d 87, 89 (7th Cir.1986); *In re Kimzey,* 761 F.2d 421, 423 (7th Cir.1985). Nonetheless, the clearly erroneous rule does not apply to review of the bankruptcy court's legal conclusions. *Kimzey,* 761 F.2d at

---

1. Under 11 U.S.C. § 544(a), the "strong-arm" clause of the Bankruptcy Code, the trustee has the rights and powers of a judicial lien creditor at the time the case is commenced. Although federal law provides the trustee with his "strong-arm" powers, his exercise of those powers is controlled by the substantive law of the jurisdiction governing the property in question. Thus, the trustee will prevail over an adverse claimant only if a judgment lien creditor would

prevail. *Angeles Real Estate Co. v. Kerxton,* 737 F.2d 416 (4th Cir.1984).

As a lien creditor, the trustee has a superior right to any *unperfected* security interests existing in the debtor's property under the Illinois Commercial Code. § 9–301(1)(b). *In re Armstrong,* 56 B.R. 781, 785 (W.D.Tenn.1986). A creditor with a *perfected* security interest, however, takes priority over the bankruptcy trustee.

423.  In the case *sub judice,* the query into whether Alexander retained a security interest in proceeds is a legal conclusion subject to *de novo* review.  *See Ebbler,* 804 F.2d at 89 ("the manner in which [the bankruptcy court's] factual conclusions implicate the legal definition of value is subject to a *de novo* review.")

■  We initially note that the issue of whether Alexander retains a perfected security interest in the proceeds from the sale of Kirk's interest in the land trust is governed by the Illinois Commercial Code.[2] This is because under the Illinois law governing land trusts, an assignment of the beneficial interest in the trust is considered personal, not real property.  *See, e.g., People v. Chicago Title & Trust Co.,* 75 Ill.2d 479, 27 Ill.Dec. 476, 389 N.E.2d 540 (1979); *Levine v. Pascal,* 94 Ill.App.2d 43, 50, 236 N.E.2d 425, 428 (1968).  The Illinois Appellate Court in *Levine* explains the nature of a land trust:

> "The Illinois Land Trust, by its very nature, is characteristically different from common law land trusts.  While the common law accomplishes a split between the legal title in the trustee and the equitable title in the beneficiary, *in an Illinois land trust, the trustee has both legal and equitable title.  By placing with the trustee the "full, complete and exclusive title to the real estate, both legal and equitable," the beneficiary in an Illinois land trust is left with a personal property interest only ...*"

(Citations omitted) (emphasis added).  In *Levine,* the Court went on to hold that, for the purposes of the Uniform Commercial Code (U.C.C.), the beneficial interest in a land trust is most aptly described as a "general intangible," which means "any personal property other than goods, accounts, contract rights, chattel paper, documents and instruments."  U.C.C. § 9–106.  Thus, because the beneficiaries' interest is personal property, case law has uniformly held that questions involving perfection of that interest are governed by the Code.  *First Federal Savings & Loan Associa-*

*tion v. Pogue,* 72 Ill.App.3d 54, 27 Ill.Dec. 588, 592, 389 N.E.2d 652, 656 (1979); *In re Loop Hospital Partnership,* 50 B.R. 565, 568 (Bankr.N.D.Ill.1985); *In re Cowsert,* 14 B.R. 335, 339 (Bankr.S.D.Fla.1980).  *Cf. Citicorp v. Bank of Lansing,* 604 F.Supp. 585, 587 (N.D.Ind.1985).

It is in this regard that the bankruptcy court's holding is in error.  Although the bankruptcy court initially follows the Code in holding that a security interest created by the assignment of a beneficial interest in a trust is automatically perfected (in other words, the secured party need not file a financing statement), that court fails to consider the Code's method of perfecting a security interest in proceeds once that interest is sold.

■  As the bankruptcy court notes in its opinion, § 9–302(1)(c) of the Illinois Commercial Code provides for automatic perfection of a security interest in a beneficiary's interest in a land trust:

> (1) A financing statement must be filed to perfect all security interests except the following:
> (c) a security interest created by an assignment of a beneficial interest in a trust or a decedent's estate ...

Prior to 1972, filing had been required.  The Illinois Code Comments immediately following this section provide:

> This paragraph changes the rule followed in *Levine v. Pascal,* 94 Ill.App.2d 43, 236 N.E.2d 425 (1st Dist.), petition for leave to appeal denied 39 Ill.2d 626 (1968), decided under the pre–1972 text, in which a beneficial interest in an Illinois land trust was held to be a general intangible which could be perfected only by filing.  Filing is no longer necessary to perfect a security interest in a beneficial interest in a trust or a decedent's estate.

This Comment dictates, as does Illinois case law, that although filing is no longer required, *perfection of an assignment of the beneficial interest* is governed by the Code.  *Loop Hospital,* 50 B.R. at 568.  It

---

**2.** The interest a debtor has in particular property, if any, is determined according to state law.

*In re Goff,* 706 F.2d 574, 578 n. 10 (5th Cir. 1983).

necessarily follows that perfection of a security interest in the *proceeds* resulting from a sale of that interest is likewise judged by Code provisions. *See In re Armstrong*, 56 B.R. 781, 786 (W.D.Tenn. 1986) ("[a] secured party's interest in proceeds is governed by § 9–306").

Section 9–306(3) of the Illinois Commercial Code addresses perfection of a security interest in proceeds:

> (3) The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but *it ceases to be a perfected security interest and becomes unperfected 20 days after receipt of the proceeds by the debtor unless*
>
> (a) a filed financing statement covers the original collateral and the proceeds are collateral in which a security interest may be perfected by filing in the office or offices where the financing statement has been filed and, if the proceeds are acquired with cash proceeds, the description of collateral in the financing statement indicates the types of property constituting the proceeds; or
>
> (b) a filed financing statement covers the original collateral and the proceeds are identifiable cash proceeds; or
>
> (c) *the security interest in the proceeds is perfected before the expiration of the 20 day period.*

■ Applying this section to the instant case, Alexander clearly had perfected security interest in the original collateral by virtue of the automatic perfection provisions of § 9–302(1)(c) even though a financing statement did not cover that collateral. When the collateral was sold, however, § 9–306(3) provides that the security interest in proceeds ceases to be perfected after 20 days unless a financing statement covers the original collateral (subsections (a) and (b)) or unless the security interest in proceeds is perfected within the 20 day period (subsection (c)). The principle underlying the 20 day period of temporary perfection is to allow the secured party time to discover the disposition of the property by the debtor. *See* Hawkland, Uniform Commercial Code Series § 9–306:04, at p. 25. After the 20 days, the perfected status under subsection 9–306(3) will expire unless certain conditions are present under 9–306(3)(a) or (b), or the secured party takes action to perfect the security interest in proceeds under subsection (c). Here, Alexander did not file a financing statement covering the original collateral, and did not otherwise perfect its security interest in the proceeds within the 20 day period.[3]

*Ergo*, its security interest became unperfected pursuant to § 9–306(3).

## III.

The bankruptcy court, however, bypassed this section of the Illinois Commercial Code. In doing so, the court essentially held that the automatic perfection provision of § 9–302(1)(c) operated to give Alexander a continuously perfected security interest in the proceeds as well as the original collateral. The court's analysis apparently did not refer to § 9–306(3) in view of its holding that the nature of the land trust itself mandates continuous perfection of the security interest in proceeds.

The bankruptcy court relied on Illinois law holding that the owner of a beneficial interest in a land trust is accorded four basis powers:

> (1) to possess, manage and physically control the real estate;
>
> (2) to receive all income generated by the property;
>
> (3) to direct the trustee in dealing with title to the real estate; and

---

**3.** Section 9–306(3) of the Illinois Commercial Code requires perfection of proceeds in the same manner as if the proceeds were original collateral. In order to perfect its security interest in the debtor's right to receive payments under the sales contract, Alexander would be required to file a financing statement. *South-* *west National Bank v. Southworth*, 22 B.R. 376 (Bankr.Dist.Kan.1982). In contrast, perfection of cash proceeds already received can only be perfected by taking possession. *First State Bank v. Morristown Lincoln-Mercury, Inc.*, 27 B.R. 801 (Bankr.E.D.Tenn.1983).

(4) *to receive the proceeds of any sale of the property* made pursuant to the power of direction.

*Wachta v. First Federal Savings & Loan Association of Waukegan,* 103 Ill.App.3d 174, 176, 58 Ill.Dec. 676, 430 N.E.2d 708 (1981) (emphasis added).

Because Alexander held a perfected security interest in Kirk's interests in the land trust, and because one of the incidents of Kirk's beneficial ownership in the land trust was the right to receive proceeds from any sale of the trust *res,* the bankruptcy court found that the security interest in proceeds remained perfected under § 9–302(1)(c).

Though its conclusion was logically reached, we believe the bankruptcy court proceeded upon the false premise that § 9–302(1)(c) of the Code intends to extend automatic perfection to proceeds merely because applicable property law accords the debtor the right to receive proceeds. Acceptance of this interpretation would ignore the detailed set of rules established by § 9–306(3) for perfection of a security interest in proceeds, and if applied to all the automatic perfection provisions, would effectively read subsection (3)(c) out of the Code.

The Code provides no reason for distinguishing land trusts from the other filing exceptions, or for that matter, from ordinary trusts. Although one of the incidents of ownership of a beneficial interest in a land trust is the right to receive proceeds, this is true of any ownership interest. The bankruptcy court's interpretation of § 9–302(1)(c) would apply with equal force to the other filing exceptions given that there are only two other methods of perfection other than the filing of a financing statement: automatic perfection under § 9–302(1) and perfection by taking possession where allowed by § 9–305.

■ If all the automatic perfection provisions contained in § 9–302 applied to proceeds, § 9–306(3)(c) would be stripped of much of its meaning. As a general rule of statutory construction, a statute should not be construed in a way that renders phrases meaningless, redundant, or superfluous. *Zimmerman v. North American Signal Co.,* 704 F.2d 347, 353 (7th Cir.1983); *Zeigler Coal Co. v. Kleppe,* 536 F.2d 398, 406 (D.C.Cir.1976). If a rule providing for the continuous perfection of proceeds beyond the 20–day period was intended by the drafters of the Code, we believe they would have so provided.

■ There is nothing in the Code to indicate that automatic perfection of a beneficiary's interest in a land trust necessarily extends to proceeds when the Code provides a specific method for perfection of a security interest in proceeds not covered by a financing statement. In our view, the right to receive proceeds as part of the beneficiary's ownership interest does not equate to automatic perfection of a security interest in those proceeds through the automatic perfection of a security interest in the original collateral. Although our research reveals no cases involving claims to the proceeds of a land trust that was subject to an automatically perfected security interest, we hold the general rule—that perfection of proceeds is governed by § 9–306—applicable to proceeds from the sale of the beneficiary's interest in a land trust.[4]

---

**4.** The need for uniformity in commercial transactions also counsels against carving out a specific exception to § 9–306(3) for land trusts. *See United States v. Burnette-Carter Co.,* 575 F.2d 587, 590 (6th Cir.), *cert. denied,* 439 U.S. 996, 99 S.Ct. 596, 58 L.Ed.2d 669 (1978). We also note that in automatic perfection situations, the non-filing of a financing statement creates a "secret lien" since there is no record to put other creditors on notice of the perfected security interest. The drafters of the UCC, by providing for automatic perfection with respect to certain collateral, yielded to a combination of pre-code practice and practical economic concerns. *See* Official Comment No. 4 to U.C.C. § 9–302; *Ledford v. Easy Living Furniture,* 52 B.R. 706 (Bankr.S.D.Ohio 1985). With respect to a security interest in proceeds from the sale of a beneficiary's interest in a land trust, neither pre-code practice nor commercial necessity mandates automatic perfection of proceeds beyond the 20–day period provided in § 9–306(3)(c). Thus, especially in the absence of a special provision to the proceeds section of the Code (§ 9–306), we decline to hold that the type of proceeds here are continually perfected.

One recent case, which we note was decided after the bankruptcy court's decision, supports this conclusion. *In re Armstrong*, 56 B.R. 781 (W.D.Tenn.1986). While not completely analogous on its facts, it set forth standards that are applicable to this case.

In *Armstrong*, the bankruptcy court for the Western District of Tennessee was asked to determine whether a creditor's interest in the proceeds from a bulk sale of motor vehicles was superior to that of the bankruptcy trustee. Like the security interest in Kirk's interest in the trust in this case, a filed financing statement was not required to perfect the security interest in the motor vehicles in *Armstrong*. § 9–302(3)(b). That court noted that because the secured party did not file a financing statement covering the proceeds, her security interest in the proceeds would ordinarily cease to be perfected within 10 days (20 days under the Illinois Code) after receipt of the proceeds by the debtor pursuant to § 9–306(3). *Armstrong*, 56 B.R. at 787. In that case, however, the debtor never received the proceeds as specifically required by § 9–306(3) for commencement of the 10 day period; therefore, the court held that the continuous perfection granted by § 9–306(3) never ceased.

The principle set forth by *Armstrong* and a case cited by the trustee, *In re Star Safety*, 39 B.R. 755 (Bankr.D.N.D.1984)[5]— that perfection of a security interest in proceeds from the sale of collateral automatically perfected under § 9–302 is governed by § 9–306(3)—applies with full force to the case at bar. As with the beneficiary's interest in a land trust, the owner of a motor vehicle has the right to receive proceeds upon disposition of the collateral. In each case, neither commercial necessity nor an express provision of the Code warrants extension of automatic perfection to proceeds. We therefore hold that the bankruptcy court should have applied § 9–306(3) to the case at bar.

In so holding, we are cognizant of the bankruptcy court's concern that this rule would place upon Alexander an undue burden of policing Kirk's activities to determine if Kirk had disposed of the collateral. The Code, however, provides a solution: Alexander needed only to file a financing statement covering the proceeds when he took the security interest. A creditor who chooses to rely on the filing exceptions to retain a perfected security interest does so at the peril that the collateral will be sold. Moreover, even if the creditor does rely solely on the filing exceptions, the Code provides a 20 day period of temporary perfection, whose purpose is to allow the secured party time to discover the disposition by the debtor. Any hardship in the statutory scheme (if it exists) must be changed by amendment rather than judicial fiat.

Subsection 9–306(3) of the Code provides for two basic methods of continuing the perfected status of a security interest in proceeds: either a filed financing statement or perfection within 20 days after receipt of the proceeds by the debtor. As previously held, this section is exclusive. Because Alexander did not take the steps required by § 9–306(3) to perfect his security interest in the proceeds after the sale of Kirk's interest in the land trusts, Alexander now has the status of an unperfected creditor. Under § 9–301(1)(b), the trustee in bankruptcy takes priority over Alexander's security interest in the proceeds.[6]

Accordingly, the decision of the bankruptcy court is reversed and remanded with directions to include the proceeds from the sale of the two condominiums as property of the estate, and to order that the property be sold free and clear of liens.

---

5. In *Star Safety*, the Court stated that a security interest in a motor vehicle that is automatically perfected is *"initially* sufficient to perfect a security interest in proceeds as well."* 39 B.R. at 757 (emphasis added). In that particular case, however, the Court's central holding was that the security interest in proceeds does not remain perfected where the secured party releases its lien in the collateral. *Id.*

6. Because we rule in appellant's favor on this issue, we do not reach appellant's remaining claims.